IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| KEITH W. LEIGEBER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 10-G-3249-M |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |
| | ) |
| | ) |

## MEMORANDUM OPINION

The plaintiff, Keith W. Leigeber, brings this action pursuant to the provisions of section 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of the Social Security Administration (the Commissioner) denying his application for Social Security Disability benefits. Plaintiff timely pursued and exhausted his administrative remedies available before the Commissioner. Accordingly, this case is now ripe for judicial review under 205(g) of the Social Security Act (the Act), 42 U.S.C. §405(g).

## STANDARD OF REVIEW

The sole function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). To that end this court "must scrutinize the record as a whole to determine if the decision reached

is reasonable and supported by substantial evidence." <u>Bloodsworth</u>, at 1239 (citations omitted).  Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." <u>Bloodsworth</u>, at 1239..

### STATUTORY AND REGULATORY FRAMEWORK

In order to qualify for disability benefits and to establish his entitlement for a period of disability, a claimant must be disabled.  The Act defines disabled as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I).  For the purposes of establishing entitlement to disability benefits, physical or mental impairment is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

In determining whether a claimant is disabled, Social Security regulations outline a five-step sequential process. 20 C.F.R.§ 404.1520(a)(4).  The Commissioner must determine in sequence:

    (1)    whether the claimant is currently employed;

    (2)    whether he has a severe impairment;

    (3)    whether his impairment meets or equals one listed by the Secretary;

    (4)    whether the claimant can perform his past work; and

   (5) whether the claimant is capable of performing any work in the national economy.

Pope v. Shalala, 998 F.2d 473, 477 (7th Cir.1993); accord McDaniel v. Bowen, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied Steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her past work, the burden shifts to the Secretary to show that the claimant can perform some other job." Pope at 477; accord Foote v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner further bears the burden of showing that such work exists in the national economy in significant numbers. Id.

   In the instant case, ALJ Kenneth Wilson determined the plaintiff met the first two tests, but concluded that while he has an impairment or impairments considered "severe," his impairments do not meet or equal in severity any impairment set forth at 20 C.F.R. Part 404, Subpart P, Appendix 1. [R. 20]. The ALJ found that the plaintiff retains the residual functional capacity to perform light work[1] and as such, can perform his past

---

[1] The ALJ's residual functional capacity finding detailed the following restrictions:

> . . . he can lift 20 pounds occasionally and 10 pounds frequently; can stand and walk for 6 hours out of an 8-hour workday; add a sit/stand option; he has unlimited use of his lower extremities; he has no use of his upper extremities; he can frequently stoop, crouch and crawl; he cannot perform any overhead reaching; he has the visual limitation of monocular vision; and wild experiencing mild to moderate pain.

[R. 19].

relevant work as a security guard. [R. 19, 22]. Accordingly, the ALJ found the plaintiff was not disabled within the meaning of the Act.

## THE STANDARD WHEN THE CLAIMANT TESTIFIES HE SUFFERS FROM DISABLING PAIN

In this circuit, "a three part 'pain standard' [is applied] when a claimant seeks to establish disability through his or her own testimony of pain or other subjective symptoms." Foote, at 1560.

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

Foote, at 1560 (quoting Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991). In this circuit medical evidence of pain itself, or of its intensity, is not required.

> While both the regulations and the Hand standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself. Thus under both the regulations and the first (objectively identifiable condition) and third (reasonably expected to cause pain alleged) parts of the Hand standard a claimant who can show that his condition could reasonably be expected to give rise to the pain he alleges has established a claim of disability and is not required to produce additional, objective proof of the pain itself. See 20 CFR §§ 404.1529 and 416.929; Hale at 1011.

Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1215 (11th Cir. 1991) (parenthetical information omitted) (emphasis added). Furthermore, it must be kept in mind that "[a] claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability." Foote at 1561. Therefore,

if a claimant testifies to disabling pain and satisfies the three part pain standard, she must be found disabled unless that testimony is properly discredited.

When the Commissioner fails to credit a claimant's pain testimony, he must articulate reasons for that decision.

> It is established in this circuit that if the Secretary fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, then the Secretary, as a matter of law, has accepted that testimony as true.  Implicit in this rule is the requirement that such articulation of reasons by the Secretary be supported by substantial evidence.

Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir. 1987).  Therefore, if the ALJ either fails to articulate reasons for refusing to credit the plaintiff's pain testimony, or if his reasons are not supported by substantial evidence, the pain testimony of the plaintiff must be accepted as true.

## THE IMPACT OF A VOCATIONAL EXPERT'S TESTIMONY

It is common for a vocational expert ("VE") to testify at a claimant's hearing before an ALJ, and in many cases such testimony is required.  The VE is typically asked whether the claimant can perform his past relevant work or other jobs that exist in significant numbers withing the national economy based upon hypothetical questions about the claimant's abilities in spite of his impairments.  "In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments."  Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999).

If the claimant is unable to perform his prior relevant work the burden shifts to the Commissioner to establish that he can perform other work. In such cases, if the vocational expert testimony upon which the ALJ relies is based upon a hypothetical question that does not take into account all of the claimant's impairments, the Commissioner has not met that burden, and the action should be reversed with instructions that the plaintiff be awarded the benefits claimed. This is so even if no other hypothetical question is posed to the VE. See Gamer v. Secretary of Health and Human Services, 815 F.2d 1275, 1280 (9th Cir. 1987)(noting that when the burden is on the Commissioner to show the claimant can do other work, the claimant is not obligated to pose hypothetical questions in order to prevail). However, it is desirable for the VE to be asked whether the claimant can perform any jobs if his subjective testimony or the testimony of his doctors is credited. Such a hypothetical question would allow disability claims to be expedited in cases in which the ALJ's refusal to credit that testimony is found not to be supported by substantial evidence.

In Varney v. Secretary of Health and Human Services, 859 F.2d 1396 (9th Cir. 1987), the Ninth Circuit adopted the Eleventh Circuit rule which holds that if the articulated reasons for rejecting the plaintiff's pain testimony are not supported by substantial evidence, that testimony is accepted as true as a matter of law. Id at 1401. The court noted that "[a]mong the most persuasive arguments supporting the rule is the need to expedite disability claims." Id. If the VE is asked whether the claimant could perform other jobs if his testimony of pain or other subjective symptoms is accepted as

true, the case might be in a posture that would avoid the necessity of a remand.  As Varney recognized, if the VE testifies the claimant can perform no jobs if his pain testimony is accepted as true, the only relevant issue would be whether that testimony was properly discredited.  Id.  This also holds true for the opinions of treating physicians.

## DISCUSSION

The plaintiff was 52 years old at the time of the ALJ's decision. The ALJ found the plaintiff has the following severe impairments: status post anterior cervical discectomy and fusion with residual radiculopathy; monocular vision due to left eye blindness; left acromioclavicular joint arthritis; and left shoulder impingement. [R. 18].  He found a non-severe impairment of weak ankles.  Id.  He found that the plaintiff could perform light work with a sit/stand option, and that he could perform his past work as a security guard. [R. 19, 22].

A February 22, 2006, MRI of the plaintiff's cervical spine showed right-sided disc herniation at C6-C7 and severe narrowing of the right neural foramina at C5-C6 secondary to uncinate osteophyte formation, mild central canal stenosis at C5-C6, and mild to moderate narrowing of the right neural foramina a C3-C4 secondary to uncinate osteophyte formation. [R. 163].  Cheng W. Tao, M.D., performed an anterior cervical discectomy and fusion on March 8, 2006. [R. 172-73].  At a March 23, 2006, follow-up, Dr. Tao noted that he was "doing very well.  His preoperative symptoms have essentially resolved." [R. 198].  Dr. Tao also noted that the plaintiff continued to smoke: "I again encouraged him to stop smoking, as this will significantly decrease the rate of fusion for

his surgery and may result in additional surgery in the future." Id.  By May 4, 2006, Dr. Tao reported that the plaintiff was doing "fairly well" and had stopped smoking. [R. 197].  He had residual right shoulder pain and subjective weakness in his left shoulder.  Id.  Plain films showed no evidence of hardware failure, and Dr. Tao released him to return to work without any restrictions.  Id.

Two years later, on May 12, 2008, the plaintiff presented at Rapid Care complaining of severe pain in his neck and shoulder. [R. 181].  On May 23, 2008, Dr. Tao found no significant tenderness to palpation of the cervical spin, and full range of motion. [R. 195].  Dr. Tao diagnosed cervical radiculopathy and prescribed pain medicine and a muscle relaxant.

On August 12, 2008, Dr. Tao referred the plaintiff to W. Allen Goodson, M.D., an orthopedist.  He told Dr. Goodson his pain was 10/10 occasionally. [R. 222].  X-rays of the left shoulder showed a "slight downsloping acromion." (shoulder blade) Id.  An August 13, 2008, MRI showed some tendinosis and degenerative changes in the acromioclavicular joint, but the rotator cuff was intact. [R. 224].  On August 19, 2008, the plaintiff described a "generalized dull achy type pain," and he was given a cortisone injection. [R. 221].  On September 30, 2008, he had satisfactory range of motion in the left shoulder with evidence of impingement, but strength was 5/5. [R. 220].  Dr. Goodson recommended arthroscopy at some point, and the plaintiff was to call back to set this up. Id.  However, there is no evidence in the record that the plaintiff sought this surgery.  Nine months later, on May 5, 2009, he returned to Rapid Care complaining of pain in

neck and shoulders with muscle spasms in his right arm. [R. 228]. He was given Naprosyn, Lorcet Plus and Klonopin. [R. 227].

The plaintiff testified that he is unable to work because of chronic moderately severe pain in his neck, right arm and shoulders, which he described as "intense." [R. 35]. He takes Lortab 7.5 mg three times a day for pain, and spends four to five hours a day lying down during the day for pain management. [R. 38]. On May 28, 2008, the plaintiff wife completed a Function Report on his behalf, which indicated that he sometimes cleans and does yard work, "if I can." [R. 128]. He feeds and waters pets and other animals, but has help. [R. 129]. He tries to mow the lawn "a little at the [sic] time till the pain [gets] to[o] bad." [R. 130]. He used to fish often until pain in his neck and shoulders became too intense. [R. 132]. He explained:

> I try to do what I can but my neck, sho[u]lders & arms get to hurting so bad I have to quit & they get to having muscle spasums [sic].

[R. 135].

The ALJ failed to credit the plaintiff's pain testimony. The ALJ first noted that the plaintiff's daily activities were not as limited as one would expect for a person with disabling pain:

> The claimant completed a Function Report [which] noted he did housework, ran errands, mowed the lawn, fished and cared for animals. In addition, the only limitation in personal care that he noted was lifting his arms above his head. This limitation is reflected in the above RFC.

[R. 21]. The ALJ's description of the plaintiff's daily activities fails to account for the qualifications and limitations noted by the plaintiff. The activities of daily living recited

9

by the ALJ do not support a finding that the plaintiff's pain testimony is not true. The ability to perform the limited activities noted by the ALJ does not rule out the presence of disabling pain. The ability to watch television, do occasional shopping, or perform other sporadic activities does not mean the plaintiff is not disabled. In this circuit it has been recognized that "participation in everyday activities of short duration, such as housework or fishing" does not disqualify a claimant from disability. Lewis v. Callahan, 125 F.3d 1346, 1441 (11th Cir. 1997). As has been noted:

> [S]tatutory disability does not mean that a claimant must be a quadriplegic or an amputee. Similarly, shopping for the necessities of life is not a negation of disability and even two sporadic occurrences such as hunting might indicate merely that the claimant was partially functional on two days. Disability does not mean that a claimant must vegetate in a dark room excluded from all forms of human and social activity. . . . It is well established that sporadic or transitory activity does not disprove disability.

Smith v. Califano, 637 F.2d 968, 971-72 (3rd Cir. 1981)(emphasis added). It is the ability to engage in gainful employment that is the key, not whether a plaintiff can perform minor household chores or drive short distances. In Easter v. Bowen, the court observed as follows:

> Moreover, an applicant need not be completely bedridden or unable to perform any household chores to be considered disabled. See Yawitz v. Weinberger, 498 F.2d 956, 960 (8th Cir.1974). What counts is the ability to perform as required on a daily basis in the "sometimes competitive and stressful" environment of the working world. Douglas v. Bowen, 836 F.2d 392, 396 (8th Cir.1987) (quoting McCoy v. Schweiker, 683 F.2d 1138, 1147 (8th Cir.1982) (en banc)).

867 F.2d 1128, 1130 (8th Cir. 1989). The Easter court further noted that "[e]mployers are concerned with substantial capacity, psychological stability, and steady attendance . . . ." 867 F.2d at 1130 (quoting Rhines v. Harris, 634 F.2d 1076, 1079 (8th Cir.1980)).

The ALJ also noted what he termed significant gaps in the plaintiff's treatment:

> Initially his treatment was consistent but there is no evidence in the medical record that the claimant has sought any further treatment since August 2008.

Id. Finally, the ALJ discussed the plaintiff's treatment history:

> The claimant did undergo surgery for his impairment, which certainly suggests that the symptoms were genuine. While that fact would normally weigh in the claimant's favor, it is offset by the fact that the record reflects that the surgery was generally successful in relieving the symptoms. As discussed in detail above, the surgeries were successful and relieved the pain and symptoms of the claimant.
>
> The record reveals that the claimant failed to follow-up on recommendations made by the treating doctor, which suggests that the symptoms may not have been as serious as has been alleged in connection with this application and appeal. At the August 30, 2008 follow-up visit at The Orthopaedic Center it was noted that the claimant should undergo a left shoulder arthroscopy with subacromial decompression and distal clavicle resection. There is no evidence that the claimant followed-up to have the procedure.
>
> The record does not contain any opinions from treating or examining physicians indicating that the claimant is disabled or even has limitations greater than those determined in this decision. It is emphasized that the restrictions indicated by the claimant's treating physician are consistent with those determined in this decision.

[R. 21-22].

Social Security Ruling 96-7p provides:

11

. . . [An] individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure. However, the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment. The adjudicator may need to recontact the individual or question the individual at the administrative proceeding in order to determine whether there are good reasons the individual does not seek medical treatment or does not pursue treatment in a consistent manner. The explanations provided by the individual may provide insight into the individual's credibility. For example:

> *  The individual's daily activities may be structured so as to minimize symptoms to a tolerable level or eliminate them entirely, avoiding physical or mental stressors that would exacerbate the symptoms. The individual may be living with the symptoms, seeing a medical source only as needed for periodic evaluation and renewal of medications.
>
> *  The individual's symptoms may not be severe enough to prompt the individual to seek ongoing medical attention or may be relieved with over-the-counter medications.
>
> * The individual may not take prescription medication because the side effects are less tolerable than the symptoms.
>
> * The individual may be unable to afford treatment and may not have access to free or low-cost medical services.
>
> * The individual may have been advised by a medical source that there is no further, effective treatment that can be prescribed and undertaken that would benefit the individual.
>
> * Medical treatment may be contrary to the teaching and tenets of the individual's religion.

SSR 96-7p at *7-8 (1996 WL 374186 (S.S.A.)).  The plaintiff testified that while his wife has health insurance, "It don't cover any of the medication and it's got a pretty high co-payment, too.  And we ain't able to meet it from time to time." [R. 39].

It is clear that the ALJ's articulated reasons for rejecting the plaintiff's pain testimony are not supported by substantial evidence.  Therefore, the ALJ failed to satisfy the requirements of Hale.  The conclusion of that court is equally appropriate in the instant case.  "[T]he Secretary has articulated reasons for refusing to credit the claimant's pain testimony, but none of these reasons is supported by substantial evidence.  It follows, therefore, that claimant's pain testimony has been accepted as true."  Hale, at 1012.  At the hearing, the VE testified that in light of the moderate to severe level of pain as testified to by the plaintiff, "he [would be] unable to keep up with the pace of the job.  He would be distracted.  He would not be able to complete tasks and he would be absent more than it would be tolerated." [R. 45].

## CONCLUSION

Therefore, the Commissioner failed to carry his burden at step five of showing the plaintiff could perform other work.  Accordingly, the plaintiff is disabled within the meaning of the Social Security Act.  An appropriate order remanding the action with instructions that the plaintiff be awarded the benefits claimed will be entered contemporaneously herewith.

DONE and ORDERED 6 September 2011.

_____
UNITED STATES DISTRICT JUDGE
J. FOY GUIN, JR.